IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REVIS RAY LOFTIS | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-0116-B-BK |
| | § | |
| DALLAS COUNTY | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the District Court's *Order of Reference* (Doc. 25), Defendant's *Motion for Summary Judgment* (Doc. 15) has been referred to the undersigned for findings, conclusions, and recommendation. After reviewing the motion, responsive pleadings, and applicable law, the Court recommends Defendant's motion for summary judgment be GRANTED as to Plaintiff's episodic acts or omissions claim, and DENIED as to Plaintiff's conditions of confinement claim.

**I. BACKGROUND**

**Factual Background**

On August 8, 2007, Plaintiff was booked into the Dallas County Jail on an aggravated sexual assault charge. (Doc. 17-3 at 2, 22-2 at 1). During the intake process, Plaintiff informed the jail staff that he was being treated for high blood pressure, for which he was taking prescribed medication, and that he had previously suffered two strokes. (Doc. 22-2 at 1). In August 2007, Plaintiff "began to feel dizzy," and he claims that many days he did not receive his prescribed medication. *Id.* In November 2007, Plaintiff's prescription was changed, requiring him to receive blood pressure medication twice daily. *Id.* However, Plaintiff avers that "[f]rom the date

1

[his] medication was changed until the date of [his] stroke on January 28, 2007, there were many, many days that [he] got only half of the medication [he] was prescribed." *Id*. at 1-2. Plaintiff states that, on average, he would receive only half of his medication, 2-3 days per week. *Id*. at 2. Plaintiff further asserts that he complained regularly that he was not receiving his blood pressure medication as it was prescribed. *Id.* According to Plaintiff, before he suffered the stroke, he told a guard that he "was feeling sick" and the next thing he remembered was "waking up at Parkland hospital." *Id.*

Prior to Plaintiff's stroke, he was physically fit and ran a lawn care service. *Id*. at 1. Thereafter, Plaintiff avers he has been confined to a wheelchair, is unable to walk more than a few steps, his speech is very slurred, and he has almost no use of his right side. *Id*. at 2.

**Procedural Background**

On January 22, 2010, Plaintiff filed suit against Dallas County pursuant to 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights, and pleaded his case under the alternative theories of "conditions of confinement" and "episodic acts or omissions." (Doc. 1 at 1-6). On February 3, 2010, Defendant filed the instant *Motion for Summary Judgment* arguing that: (1) Plaintiff has failed to establish an actionable claim under 42 U.S.C. § 1983 for denial of medical care based on the episodic acts or omissions of governmental officials; (2) Plaintiff cannot raise claims under both conditions of confinement and episodic acts or omissions theories of recovery; (3) this is an episodic acts or omissions case, rather than a conditions of confinement case; and (4) even if the Court construes Plaintiff's complaint as raising a conditions of confinement claim, the analysis as to the essential elements does not change in any material way and, thus, Plaintiff has also failed to establish an actionable claim based on a conditions of

confinement theory of liability. (Doc. 16). Plaintiff responds that: (1) he "voluntarily withdraws any claim pleaded under the episodic acts or omissions theory of recovery . . . [and] now asserts his claims solely under the conditions of confinement theory of recovery"; (2) the two theories of recovery were properly plead in the alternative; (3) the case is a conditions of confinement case; and (4) he has presented sufficient summary judgment evidence to demonstrate that genuine issues of material fact exist with respect to his conditions of confinement claim. (Doc 21).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party need not produce evidence negating the existence of a material fact, but need only point out the absence of evidence supporting the nonmoving party's case. *Celotex*, 477 U.S. at 325.

Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted). However, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Indeed, the party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas v. Tennessee Gas Pipeline Co.*, 136

F.3d 455, 458 (5th Cir. 1998). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir. 1992).

When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Matsushita.*, 475 U.S. at 587. If, however, the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which he will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### III. APPLICABLE LAW AND ANALYSIS

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citations omitted).

Although the state has an important interest in the incarceration of pretrial detainees and convicted state prisoners,

> The State's exercise of its power to hold detainees and prisoners ... brings with it a responsibility under the U.S. Constitution to tend to the essentials of their well-being:
>
>> [W]hen the State by affirmative exercise of its powers so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human

> needs . . . it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.

*Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir.1996) (*en banc*) (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)).

Convicted prisoners derive their right to have these basic needs met from the Eighth Amendment's prohibition on cruel and unusual punishment. *Id*. Pretrial detainees, on the other hand, having not been adjudged guilty of any crime and therefore not punishable at all, derive their protections from the due process guarantees of the Fourteenth Amendment. *Id*.; *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979). The protections afforded pretrial detainees are said to be "at least as great as ... [those] available to a convicted prisoner." *Hare*, 74 F.3d at 639 (internal quotation marks omitted). Thus, because Plaintiff in this case was a pretrial detainee at the time of the events alleged in the complaint, the operative question is whether he suffered a violation of his Fourteenth Amendment rights.

The applicable standard for making this determination depends on whether the constitutional challenge is based on a "condition of confinement" or an "episodic act or omission." *Shepherd v. Dallas County*, 591 F.3d 445, 451-54 (5th Cir. 2009). As an initial matter, Plaintiff states in his response that he "voluntarily withdraws any claim pleaded under the episodic acts or omissions theory of recovery." (Doc. 21 at 5). Accordingly, the Court recommends that Defendant's *Motion for Summary Judgment* be **GRANTED** as to Plaintiff's episodic acts or omissions claims. Moreover, because Plaintiff has abandoned his claims

"pleaded under the episodic acts or omissions theory of recovery" (Doc. 21 at 5), Defendant's arguments that Plaintiff cannot assert a claim under both conditions of confinement and episodic acts or omissions theories of recovery, and that Plaintiff's claims should be considered under an episodic acts or omissions theory, rather than a conditions of confinement one (Doc. 16 at 10-12), are now **MOOT**.

It should be noted, however, that Defendant has previously made and lost the same arguments in the Court of Appeals for the Fifth Circuit.[1] *See Shepherd*, 591 F.3d at 451-54. "Constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Id.* at 452 (citing *Hare*, 74 F.3d 633, 644-45). Moreover, in rejecting Defendant's argument in *Shepherd* that the plaintiff's allegations, nearly identical to those made in the complaint here, raised an acts or omissions case, and not a conditions of confinement one, the Fifth Circuit held:

> Shepherd's claim, by contrast, does not implicate the acts or omissions of individuals but the jail's system of providing medical care to inmates with chronic illness. His original complaint contains the full theory of the case: The jail's evaluation, monitoring, and treatment of inmates with chronic illness was, at the time of Shepherd's stroke, grossly inadequate due to poor or non-existent procedures and understaffing of guards and medical personnel, and these deficiencies caused his injury.

---

[1] The Court questions whether Defendant has made these arguments in good faith. The same issues were not only raised by this *Defendant* and squarely rejected by two district judges of this Court (*Duval v. Dallas County*, No. 3:07-CV-0929-L (J. Lindsay); *Shepherd v. Dallas County*, 3:05-CV-1442-D (J. Fitzwater)), but in the direct appeal of *Shepherd*, Defendant's exact arguments were also rejected by the appellate court. Here, not only does the Defendant make the same arguments as those it made in *Duval* and *Shepherd*, but has apparently copied and pasted pages of the losing arguments with no attempt to distinguish this case in any way, and, more importantly, without disclosing the fact that binding precedent weighs against them. Such practice not only wastes judicial resources, but also pushes ethical bounds.

*Id*. at 453.  Here, Defendant's argument is equally without merit, as Plaintiff's alleges – just as the plaintiff in *Shepherd* did – that: (1) he informed the jail staff that he had hypertension; 2) despite frequent complaints, his medication was not dispensed as prescribed; 3) he complained to jail staff and medical personnel about the lack of treatment; and 4) he was found in his cell and taken to the hospital where doctors concluded he had suffered a stroke because of a hypertensive emergency.  (Doc 1 at 2-3); *Shepherd*, 591 F.3d at 449-50.  Likewise, Plaintiff repeatedly challenges the "conditions at the Dallas County Jail" and the "inadequate system of medical care" in his complaint.  (Doc. 1 at 3-6); *Shepherd*, 591 F.3d at 449.

*<u>Does Plaintiff's summary judgment evidence raise a genuine issue of material fact</u>?*

The only remaining issue before the Court is whether Plaintiff has submitted competent summary judgment evidence that raises a genuine issue of material fact as to his conditions of confinement claim.

Defendant argues there is no evidence that:

1) the Plaintiff received an inadequate level of medical care as a result of the general conditions of his confinement in the Dallas County Jail which constituted inhumane treatment or punishment;

2) County officials were aware that the level of medical care in the Dallas County Jail was inadequate let alone that it constituted inhumane treatment or punishment of the Plaintiff;

3) the level of medical care provided to the Plaintiff in the jail was not related to a legitimate governmental objective; and

4) the general conditions of confinement were the cause, in fact, of an injury to the Plaintiff.

(Doc. 16 at 13-14).  Defendant also submits evidence, which it argues shows Defendant did not fail to address Plaintiff's serious medical needs and outlines the steps that have been taken to

provide constitutionally adequate medical care at the Dallas County Jail. (Doc. 16 at 14-16; 17; 25 at 9-11).

In response, Plaintiff avers that he has presented sufficient summary judgment evidence to demonstrate that genuine issues of material fact exist with respect to his conditions of confinement claim. (Doc 21). That evidence includes:

1) the Declaration of Plaintiff's Attorney Don Title;

2) the Declaration of Plaintiff Revis Ray Loftis;

3) the Parkland Hospital discharge summary pertaining to Loftis;

4) Declaration and CV of Plaintiff's expert Dr. Joel L. Nitzkin;

5) Report by the Health Management Associates (HMA) on the health programs at the Dallas County Jail;

6) Report from the Department of Justice (DOJ) on the Dallas County Jail; and

7) Dr. Puisis Second Monitoring Report for the Dallas County Jail.

(Doc. 22).

Defendant retorts that Plaintiff's evidence is not competent summary judgment evidence and separately objects to it on various grounds. (Doc. 27). However, for the reasons set forth in more detail below, the Court **OVERRULES** Defendant's objections to Plaintiff's summary judgment evidence.

In *Shepherd*, the Fifth Circuit made clear that a conditions of confinement case is proven by the manifestation of an explicit policy or restriction; however, in some cases, a condition may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail]

officials, to prove an intended condition or practice." *Id*. at 452 (citations omitted). "[E]ven where a State may not want to subject a detainee to inhumane conditions of confinement or abusive jail practices, its intent to do so is nevertheless presumed when it incarcerates the detainee in the face of such known conditions and practices." *Duvall v. Dallas County*, 631 F.3d 203, 207 (5th Cir. 2011). Further, "[t]o constitute impermissible punishment, the condition must be one that is 'arbitrary or purposeless' or, put differently, 'not reasonably related to a legitimate goal.'" *Shepard*, 591 Fr.3d at 452 (citation omitted).

Here, Plaintiff has raised a genuine issue of material fact as to whether he received an inadequate level of medical care as a result of the general conditions of his confinement in the Dallas County Jail which constituted inhumane treatment or punishment. To support his claim, and in contradiction of Defendant's evidence that Plaintiff received proper medical care, Plaintiff has submitted his own sworn declaration[2] stating he would often not receive his prescribed medication and on many occasions complained of such to the jail staff. (Doc. 22).

<u>Dr. Nitzkin's declaration</u>

In addition, Plaintiff submitted the sworn declaration of his expert, Dr. Joel L. Nitzkin.[3]

---

[2] Defendant objects to statements made in Plaintiff's declaration "because they contain conclusory statements of the declarant Revis Ray Loftis ("Loftis") which are not based on the personal knowledge of Loftis or to which he is not competent to testify." (Doc. 27 at 2; 29 at 2). Plaintiff additionally objects to statements made in Plaintiff's declaration as inadmissible hearsay. (Doc. 27 at 2; 29 at 3). These objections are overruled as the statements in Plaintiff's declaration are based on Plaintiff's personal knowledge and observations, and the Court finds no defects in the statements on which it has relied. *See Shepard v. Dallas County*, No. 3:05-cv-1442, 2008 WL 656889 at *7 (N.D. Tex. 2008) (holding the same).

[3] Defendant objects to paragraphs of Dr. Nitzkin's declaration because they contain conclusory statements which are not based on personal knowledge. (Doc. 27 at 2; 29 at 4).

(Doc. 22-4). Dr. Nitzkin opined that, based on Plaintiff's declaration and a review of the record, he fully supports Plaintiff's allegations of major systematic deficiencies in the Dallas County Jail healthcare system. *Id*. at 2-3. Dr. Nitzkin further states that despite "showing incompletely controlled hypertension" at the time of booking, Plaintiff was not given an examination or a plan for monitoring his blood pressure. *Id*. at 3. In fact, Dr. Nitzkin stated that based on the record, Plaintiff's blood pressure was not measured between his August booking and November 3, 2007; between November 9, 2007, and December 7, 2007; and from December 7, 2007, through January 28, 2008. (*Id*. at 4). Dr. Nitzkin opined that the proper standard of care under the circumstances would have been to perform "at least weekly blood pressure measurements." *Id*. at 3.

Plaintiff has also submitted a Report by the HMA on the health programs at the Dallas County Jail, a Report from the DOJ on the Dallas County Jail, and Dr. Puisis's Second Monitoring Report for the Dallas County Jail which detail the numerous and consistent failures of the Dallas County Jail health programs from 2004 though May 2008. (Doc. 22-5, 22-6, 22-7).[4]

---

Defendant also objects to portions of Dr. Nitzkin's declaration as hearsay. As an expert witness, Dr. Nitzkin's conclusions and opinions based on his review of relevant materials and his medical experience are admissible. Moreover, expert opinions may be premised upon hearsay. *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1576 (5th Cir.1996) ("Experts may rely on hearsay evidence in forming their opinions."); FED. R. EVID. 702, 703. Accordingly, Defendant's objections to Dr. Nitzkin's declaration are overruled.

[4] Defendant objects to the reports because they: 1) lack sufficient foundation; 2) lack relevance because they do not address the medical care of the Plaintiff or the conditions of his confinement in the Dallas County Jail during the time period between August 8, 2007, to January 28, 2008; 3) are hearsay; 4) contain hearsay within hearsay; and 5) contain conclusory statements. (Doc. 27 at 2-3).

As have other judges of this Court considering objections to the same evidence, the undersigned overrules Defendant's objections because: 1) Defendant's lack of foundation

The HMA report

In February 2004, Michael Puisis, M.D. and his team performed the onsite analysis and prepared an independent report on behalf of HMA. (Doc 22-5). The HMA Report revealed systemic failures in the medical care provided at the Dallas County Jail and made recommendations for improvement. *Id.* The HMA report revealed, *inter alia*, that:

- There is no policy or procedure for how inmates who come into the Jail at intake are to receive their medication or to be referred to a physician. *Id*. at 12.

- The lack of continuity of medication along with the absence of physician evaluations can only promote deterioration of clinical status ultimately resulting in unnecessary hospital and emergency room visits. *Id*. at 39.

- Inmates with chronic disease do not see a physician who knows how to manage the illness at the Dallas County Jail. *Id.*

- The method of monitoring patients is poor to non-existent. *Id.*

- Inmates with chronic disease are seen when their condition deteriorates to an urgent status while the others usually are discharged prior to being seen. This type of system, as evidenced by chart review, results in disease deterioration to the point of requiring hospitalization in multiple individuals. *Id*. at 40.

The DOJ report

Plaintiff also relies on a report by the DOJ, based on onsite inspections of the Jail during a two-month period in early 2006. (Doc. 22-6). The DOJ report found the results of its

---

objection is not specific and therefore insufficient; 2) the reports are relevant as they lend support to Plaintiff's allegations to show extended or pervasive misconduct by jail officials to prove an intended condition or practice; 3) the reports fall under the public record exception to the hearsay rule; 4) Defendant's hearsay within hearsay objections are too general and thus insufficient; and 5) the reports do not contain conclusory statements. *See Duval v. Dallas County*, No. 3:07-cv-0929, 2008 WL 4561563 at *9 (N.D. Tex. 2008)*; Palo v. Dallas County*, No. 3:05-cv-0527, 2007 WL 2140590 at *7-9 (N.D. Tex. 2007); *Shepard*, 2008 WL 656889 at *7 . In addition, the reports' relevance cannot be seriously doubted, as Plaintiff has alleged that medical care at the jail was constitutionally inadequate, and the reports' recitation of facts and findings provide strong support for that claim. *Shepard*, 591 F.3d at 457.

investigation to be consistent with the findings in the HMA Report, and concluded that Dallas County Jail had violated inmates' constitutional rights to medical care. *Id*. at 1-2, 4. As detailed in the report the DOJ found inmates' constitutional rights were violated by the Dallas County Jail failing "to provide inmates with: (1) adequate medical care; (2) adequate mental health care; and (3) safe and sanitary environmental conditions." *Id*. at 2. Specifically, the DOJ found inadequate: 1) intake screening; 2) acute care; 3) chronic care; 4) treatment and management of communicable disease; 5) access to heath care; 6) follow-up care; 7) record keeping; 8) medication administration; 9) medical facilities; 10) speciality care; 11) staffing, training, and supervision; 12) quality assurance; and 13) dental care. *Id*. at 4. Regarding Dallas County's inadequate chronic care, the DOJ reported that inmates with chronic conditions are plagued by delays in treatment and administration of medication and are often not scheduled for follow-up medical assessment. *Id*. at 9. As a result of deficient chronic care, inmates health and lives were put at serious risk, as inmates routinely missed doses of life-sustaining medications. *Id*. at 9-21.

<u>Dr. Puisis's Second Monitoring Report</u>

Dr. Puisis revisited the Dallas County Jail a few months after Plaintiff's stroke. (Doc. 22-7 at 1-2). Although Dr. Puisis's follow up report indicated significant progress had been made at the Dallas County Jail, he found many medical problems still persisted. *Id*. at 2. Dr. Puisis's Second Monitoring Report noted, *inter alia*, the following:

• Performing the intake physical examination by a provider is a remaining significant problem. *Id*. at 2.

• Tracking chronic diseases is still not in place ... thus many patients with chronic illness are lost to follow up. *Id*. at 10.

• Adherence to a standardized format for documenting chronic care

interventions is just beginning to be developed. As a result, documentation of necessary testing or interventions is not consistently done. *Id*. at 11.

• With respect to continuity of medications there are major problems ... There are also significant problems with continuity of medications for patients with chronic diseases resulting in frequent medication lapses. *Id*. at 23.

As the District Court stated in considering similar evidence in *Shepard*, "if the summary judgment evidence that this court has reviewed . . . is corroborated at trial, a reasonable jury could easily find that at least some aspects of the medical care provided at the Dallas County Jail is *shockingly inadequate*, to the point that it deserves the strongest of rebukes." *Shepard,* 2008 WL 656889 at *7. Accordingly, the Court finds that Plaintiff has adduced sufficient evidence to enable a jury to find he received an inadequate level of medical care as a result of the general conditions of his confinement at the Dallas County Jail.

The Court is also unpersuaded by Defendant's argument that "there is no evidence that County officials were aware that the level of medical care in the Dallas County Jail was inadequate let alone that it constituted inhumane treatment or punishment of the Plaintiff." (Doc. 16 at 13-14; 25 at 7). Once again, Defendant's argument is without merit in light of the medical history of, and reports on, the Dallas County Jail health care system that indicate Defendant has known for years that its health care program is constitutionally inadequate and that many deficiencies specifically complained of by Plaintiff were still found months after Plaintiff's stroke. (Doc. 1; 22-2; 22-4; 22-5; 22-6). Furthermore, it is well established law that a plaintiff need only show *a de facto* policy, as evidenced by a pattern of acts or omissions "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice." *Shepherd*, 591 F.3d at 452 (citations

omitted). The Court finds that the reports outlined above, based on four years of observations, were not only known by Defendant but are sufficient evidence to enable a jury to find a pattern of acts or omissions sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by jail officials, to prove an intended condition or practice. *Id*.

Defendant's contention that there is no evidence that the level of medical care provided to the Plaintiff in the jail was not related to a legitimate governmental objective is also unpersuasive. (Doc. 16 at 14). Pretrial detainees are not entitled under the Constitution to the best medical care available or to the level of medical care that may be available to persons who are not detained or incarcerated, provided the level of medical care they receive does not seriously deprive them of their basic human needs, or the level of medical care is reasonably related to a legitimate governmental objective. *Shepard*, 591 F.3d at 455. Therefore, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." *Bell v. Wolfish*, 441 U.S. 520, 539 (1979). Conversely, if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court is permitted to infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. *Id*. Accordingly, in cases such as the one at hand that are grounded in unconstitutional conditions of confinement, the plaintiff need only show that such a condition, which is alleged to be the cause of a constitutional violation, has no reasonable relationship to a legitimate governmental interest. *Duvall*, 631 F.3d at 207.

As in *Shepard*, Plaintiff's evidence raises a genuine issue of fact that serious injury and death were the inevitable results of the jail's gross inattention to the needs of inmates with

chronic illness. 591 F.3d at 454. In the absence of any legitimate penological or administrative goal, this would amount to punishment. *Id.* The reports submitted by Plaintiff tend to show that the conditions at the Dallas County Jail were not reasonably related to any legitimate governmental purpose but were instead the byproduct of Dallas County's inadequate system medical care. (Doc. 22-5, 22-6, 22-7). If the conditions complained of and referenced in the reports outlined above are verified at trial, there can be little doubt that a jury could find that the level of care at the Dallas County Jail was not related to a legitimate governmental objective.

Defendant's argument that there is no evidence that "the general conditions of his confinement were the legal cause of the Plaintiff's injuries" is also without merit. (Doc. 16 at 13-14; 25 at 7, 12). Dr. Nitzkin opines that:

> • With his history of hypertension and prior strokes, it was critical that Mr. Loftis have his blood pressure checked at least weekly, and his medications administered exactly as prescribed. The failure of the Jail medical providers to take these actions in reasonable medical probability resulted in Mr. Loftis's stroke.
>
> • Given Mr. Loftis's medical history and [his] findings in the Jail health records, it is [his] professional opinion that the inadequacies and inconsistencies in the healthcare delivery system at the Dallas County Jail from August 2007 through January 2008 were the direct medical cause of [Plaintiff's] catastrophic stroke [and Plaintiff's] current deficits were caused by the stroke.
>
> • More likely than not, in reasonable medical probability this stroke could have been prevented.
>
> • The deficiencies and inadequacies in the Dallas County Jail heathcare delivery system that led to Mr. Loftis's stroke ... are the same ones detailed in the 2005 HMA report and noted as continuing in the 2006 [DOJ] report and subsequent Monitoring Report by Dr. Puisis.

(Doc. 22-4 at 5). The Court finds that Dr. Nitkin's sworn statements constitute more than sufficient evidence to enable a jury to find that the general conditions of his confinement were

15

the legal cause of the Plaintiff's injuries.

Finally, Defendant argues that it has submitted sufficient evidence to establish that no genuine issue of material fact exists as to whether Plaintiff was provided constitutionally inadequate medical treatment. (Doc. 25 at 9-11). However, Plaintiff's declaration, based on his first-hand knowledge of the events, directly contradicts that evidence. At this stage, however, the Court does not decide between conflicting evidence, as that is solely within the province of the trier of fact. It is sufficient that Plaintiff has come forward with some competent evidence that establishes a genuine issue of material fact for trial. *Matsushita*, 475 U.S. at 587 (holding non-movant need only "come forward with specific facts showing that there is a genuine issue for trial").

## V. CONCLUSION

For the foregoing reasons, it is recommended that Defendant's *Motion for Summary Judgment* (Doc. 15) be **GRANTED** as to Plaintiff's episodic acts or omissions claim, and **DENIED** as to Plaintiff's conditions of confinement claim.

**SIGNED** July 27, 2011.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
<u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>**

      A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE